**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FENGLIN ZHANG,<br><br>  Plaintiff,<br><br>vs.<br><br>AICEM GROUP, LLC, et al.,<br><br>  Defendants. | Case No.: 13-cv-1342 KAW<br><br>REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND ORDER REASSIGNING CASE |

   Fenglin Zhang ("Plaintiff") moves for default judgment against Aicem Group, LLC ("Aicem Group"), Wenly Group, LLC ("Wenly Group"), Zhenwen Liang ("Liang"), and Yali Zhang ("Zhang") (collectively, "Defendants") for violations of federal and state wage and hour laws. The court held a hearing on the motion on January 16, 2014. For the reasons set forth below, the court recommends that the motion be granted and default judgment be entered against Aicem Group and Wenly Group, jointly and severally, [1] in the amount of $354,048.26.

   Furthermore, as Defendants have not consented to magistrate judge jurisdiction, *see* 28 U.S.C. § 636(c), this matter should be reassigned to a district judge.

---

[1] Wenly Group was registered as Wenly Care's owner as of December 2, 2005. Zhang Decl., Ex. 1, Fictitious Business Name Statement No. 2005-5124. Aicem Group was registered as Wenly Care's owner as of July 27, 2011. Zhang Decl., Ex. 1, Fictitious Business Name Statement No. 201102829. Plaintiff's paystubs show that both entities had the same physical address, which also appears to be the individual defendants' mailing address. Zhang Decl., Ex. 4, Paystubs. For this reason, the court finds that any judgment issued should impose joint and several liability as to the purportedly distinct defaulting business entities.

# I. BACKGROUND

## A. Plaintiff's employment

Plaintiff alleges that from March 2, 2009 to November 4, 2012, he worked for Defendants. (Compl. ¶¶ 6, 8, 9, Dkt. No. 1; Zhang Decl. ¶¶ 4, 11, Dkt. No. 23.) Defendants operate an elderly care facility, Wenly Care, in Sonoma County. (Compl. ¶¶ 6, 8, 9, Dkt. No. 1; Zhang Decl. ¶¶ 4, 11, Dkt. No. 23.) According to Plaintiff, from March 2, 2009 to July 29, 2012, he worked approximately 126 hours per week. (Compl. ¶ 6.) Plaintiff describes his schedule for that period was as follows: 12:00 a.m. to 8:30 a.m. and 2:00 p.m. to 12:00 a.m. on weekdays, 12:00 a.m. to 9:30 a.m. and 9:30 p.m. to 12:00 a.m. on Saturdays, and 12:00 a.m. to 12:00 a.m. on Sundays. *(Id.)* Plaintiff asserts that he worked approximately 103.5 hours per week from July 30, 2012 to November 4, 2012. *(Id.* ¶ 14.) He alleges that during that period, he worked from 4:00 p.m. to 12:00 a.m. on Mondays, 12:00 a.m. to 8:30 a.m. and 2:00 p.m. to 12:00 a.m. Tuesdays through Fridays, 12:00 a.m. to 9:30 a.m. and 9:30 p.m. to 12:00 a.m. on Saturdays, and 12:00 a.m. to 9:30 a.m. on Sundays. *(Id.)* Plaintiff asserts that of the 100+ hours he worked each week, approximately 75 hours per week were "on-call." (Zhang Decl., Ex. 5, Wenly Care Working Schedule Time Sheet for Fenglin Zhang July 16, 2012 – July 29, 2012.)[2] Plaintiff further asserts that during these hours, he was required to remain in the care facility and assist residents as needed. *(Id.)*

Plaintiff alleges that Defendants paid him a bi-weekly salary of $1,062.00 from March 2, 2009 to May 23, 2010. (Compl. ¶ 9.) Plaintiff asserts that he did not receive any overtime pay during that period. (Zhang Decl. ¶ 17.) Plaintiff also alleges that Defendants paid him an $8.00 hourly wage from May 24, 2010 to November 4, 2012. (Compl. ¶ 10.) From May 24, 2010 to July 29, 2012, Plaintiff received 18 hours of overtime pay per week at a rate of $12.00 per hour.

---

[2] Plaintiff's schedule for the period of July 16, 2012 – July 29, 2012 includes regular entries for "on-call/sleep" hours and "off" hours. Zhang Decl., Ex. 5. The schedule also states that "on-call/sleep time is not paid unless [the employee] work[s] while on-call/sleep and record[s] it on the appropriate form." *Id.* Notably, Plaintiff's declaration does not list his hours according to the schedule provided. Zhang Decl. ¶¶ 12, 13. The schedule sheet nonetheless supports the number of hours after including "on-call/sleep" hours in the total number of hours.

(Compl. ¶ 10; Zhang Decl. ¶ 18.)  From July 30, 2012 to November 4, 2012, Plaintiff received 7 hours of overtime pay per week at a rate of $12.00 per hour.  *(Id.)*  Plaintiff also asserts that while employed by Defendants, he took a total of 8 weeks of vacation without pay (March 29, 2010 to April 11, 2010 and April 9, 2012 to May 20, 2012) but "worked all other days without taking sick leave or holiday[s] off."  (Zhang Decl. ¶ 15.)  Plaintiff further alleges that Defendants never set a meal schedule, routinely required him to work without any uninterrupted thirty-minute meal periods, and did not compensate him for any missed meal periods.  (*Id.* ¶ 19.)

### B.     The complaint and Plaintiff's motions for default judgment

On March 25, 2013, Plaintiff filed a complaint against Defendants, alleging violations of federal and state minimum wage and overtime laws, including the FLSA, 29 U.S.C. §§ 201-219, various sections of the California Labor Code, and California's unfair competition law ("UCL"). (Compl. ¶ 1.)

Summons were issued on March 25, 2013.  (Summons, Dkt. No. 2.)  Plaintiff served all Defendants with the summons and complaint.  (Certificates of Service, Dkt. Nos. 6, 7, 8, 9.)  After service of these documents, the parties apparently agreed that Defendants would have until May 30, 2013 to respond to the complaint. (Ji Decl. ¶ 3; Dkt. No. 10.)  By letter dated May 1, 2013, Defendants' counsel memorialized a conversation she had with Plaintiff's counsel on that point. (*Id.*, Ex. 1, May 1, 2013 Letter from Theresa R. Fritz to Ming Ji.)

That letter reads:

> This [letter] further confirms that you agreed to grant an extension to file an Answer on behalf of all Defendants until May 30, 2013, wherein no default shall be filed, on or before May 30, 2013.
> As I mentioned today, I will be sending you a letter regarding a request to dismiss the two individuals, as they were not the Plaintiff's employer.  Alternatively, we will bring a Demurrer and seek reimbursement of attorneys fees and costs.  The extension of time will allow us to explore this issue before having to file answers.

Defendants did not file an answer by the agreed-upon deadline.  On May 31, 2013, Plaintiff requested that default be entered against Defendants.  (Mot. Entry of Default, Dkt. No 10.) According to Plaintiff's attorney, defense counsel contacted him via facsimile on May 31, 2013, after the request for default had been made but before the Clerk entered default on June 3, 2013.

3

Defense counsel had requested an additional extension of time to file an answer, to which Plaintiff's attorney did not agree, because defense counsel had not articulated an adequate reason for an additional extension of time.

Notwithstanding these communications between counsel, Plaintiff moved for default judgment on August 30, 2013, seeking recovery of damages, prejudgment interest, and statutory penalties. (Mot. Default J., Dkt. No. 15.) The court heard the motion on October 17, 2013. After reviewing Plaintiff's papers and considering the arguments of Plaintiff' counsel, the court denied Plaintiff's motion. (Oct. 25, 2013 Order, Dkt. No. 21.) The court determined, based on the communications between counsel, that Defendants had made an appearance in this action and were therefore entitled to notice of the motion for default judgment consistent with Federal Rule of Civil Procedure 55(b)(2). (*Id.* at 5.) Because Plaintiff had not provided such notice in connection with original motion, the court denied it without prejudice. *(Id.)*

Plaintiff filed his renewed motion for default judgment on December 12, 2013. (Renewed Mot. Default J., Dkt. No. 22.) On January 10, 2013, Plaintiff filed a certificate of service. (Cert. of Service, Dkt. No. 27.) The certificate of service indicates that Defendants, and their counsel, Ms. Frisk, were served with notice of Plaintiff's renewed motion for default judgment by mail on January 8, 2014. (*Id.* at 2.) As service by mail is complete upon mailing, the court is satisfied that Plaintiff provided timely service of his renewed motion for default judgment as required by Federal Rule of Civil Procedure 55(b)(2). *See* Fed. R. Civ. P. 55(b)(2) ("If a party against whom a default judgment is sought has appeared personally or by representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing."). Given that Plaintiff has satisfied this notice requirement, the court now turns to the merits of Plaintiff's renewed motion for default judgment.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). The decision to enter a default judgment lies within the court's

discretion. *Id.* at 999 (citations omitted); *see also Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Before assessing the merits of a motion for default judgment, a court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the defendants. *See Tuli v. Republic of Iraq (In re Tuli)*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds that these elements are met, it turns to the following factors ("the *Eitel* factors") to determine whether it should enter a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel*, 782 F.2d at 1471-72 (citation omitted). In this analysis, "the well-pleaded allegations of the complaint relating to the defendant's liability are taken as true." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (citing *Televideo Sys., Inc. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). Nevertheless, default does not compensate for essential facts not within the pleadings and those legally insufficient to prove a claim. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992), *superseded by statute on other grounds*, Pub. L. No. 100-702, 102 Stat. 4669.

### III.   DISCUSSION

#### A.   Subject matter jurisdiction and personal jurisdiction

In his complaint, Plaintiff alleges violations of a federal statute, the FLSA, 29 U.S.C. §§ 201-219. This court thus has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331(a). This court has supplemental jurisdiction to decide related state law claims under 28 U.S.C. § 1367.

Defendants Aicem Group, Wenly Group, Liang, and Zhang have been served. This court thus has personal jurisdiction over Defendants. *See* FED. R. CIV. P. 4.

#### B.   The *Eitel* factors

1.   <u>The possibility of prejudice to Plaintiff</u>

Under the first *Eitel* factor, the court considers the possibility of prejudice to a plaintiff if default judgment is not entered against a defendant. *Eitel*, 782 F.2d at 1471. Here, Plaintiff would likely have no other recourse for recovery if the motion for default judgment is denied. *See PepsiCo*, 238 F. Supp. 2d at 1177 (C.D. Cal. 2002) ("If Plaintiff's motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.") For this reason, a decision not to enter a default judgment in this case would prejudice Plaintiff. The first *Eitel* factor thus weighs in favor of the entry of default judgment.

    2.  <u>The merits of Plaintiff's claims and the sufficiency of the complaint</u>

The second and third *Eitel* factors concern the merits of a plaintiff's claims and the sufficiency of the allegations in the complaint. *Eitel*, 782 F.2d at 1471. In analyzing these two factors, the court accepts as true all well-pleaded allegations in the complaint. *Televideo*, 826 F.2d at 917-18 (citations omitted).

    *i.*  *Violations of the FLSA*

An employer is subject to the FLSA if (1) its employees individual are "engaged in commerce" or (2) the employer is an "enterprise engaged in commerce"[3] with at least $500,000 in "annual gross volume of sales made or business done." 29 U.S.C. §§ 203, 206, 207. An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). A "person" is "an individual, partnership, association, corporation . . . or any organized group of persons." *Id.* § 203(a). The definition of employer is to be given "an expansive interpretation in order to effectuate the FLSA's broad remedial purposes." *Lambert v. Ackerley*, 180 F.3d 997, 1012 (9th Cir. 1999) (quotations and citation omitted). An individual may be held liable under the FLSA where he exercises "control over the nature and structure of the employment relationship" or "economic control" over the relationship. *Id.*

The FLSA requires that any employee who works more than 40 hours in one week be paid at a rate of "not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). This provision does not apply to several categories of "exempt" employees,

---

[3] An "enterprise engaged in commerce . . . is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 . . . ." 29 U.S.C. § 203(s)(1)(A)(ii).

such as employees of an amusement or recreational establishment, employees working in an executive, administrative, or professional capacity, and employees working in connection with the publication of certain weekly, semiweekly, or daily newspapers. *Id.* § 213.

In his complaint, Plaintiff alleges that Defendants operate a business enterprise engaged in commerce as defined in 29 U.S.C. § 203, which has at least $500,000 in annual gross volume of sales. (Compl. ¶¶ 2, 16.) Such allegations, taken as true, are sufficient to bring each of the defendant entities within the ambit of the FLSA as an "enterprise engaged in commerce." *See* 29 U.S.C. § 203(s)(1). Plaintiff asserts that he did not perform "exempt" duties while employed as a care giver with Defendants, did not perform management or administrative functions, and did not exercise independent discretion and judgment. (Compl. ¶¶ 11, 18.) Plaintiff also alleges that he worked in excess of 40 per week without overtime pay, which Defendants willfully and intentionally denied him. (Compl. ¶¶ 12, 21.) Taken as true, these allegations establish the defendant entities' liability for violating the FLSA.

Plaintiff, however, has not shown that the individual defendants, Liang and Zhang, are subject to liability under the FLSA. Absent from the complaint is any allegation that either of these individuals exercised "control over the nature and structure of the employment relationship" or "economic control" over the relations. *See Lambert*, 180 F.3d at 1012. For example, Plaintiff has not alleged that either individual had a significant ownership interest with operational control over significant aspects of Wenly Care's day-to-day functions, the power to hire and fire employees, the power to determine salaries, or the responsibility to maintain employment records. *See id.* In the complaint, Plaintiff merely asserts that Defendants "operate an elder care center" and are "engaged in business in Northern California." (Compl. at 2, 4, 5.) This is insufficient to establish liability under the FLSA as against the individual defendants. *See Lambert*, 180 F.3d at 1012.

The declarations submitted in support of Plaintiff's renewed motion for default judgment do not remedy this deficiency, as the assertions in the declarations are not included as allegations in the complaint. In his declaration, Plaintiff asserts that there "was a unity of interest and ownership among the defendants" and that "separate personalities among the defendants do not exist."

7

(Zhang Decl. ¶ 3.) He also asserts that "Zhang and Liang represented to [him] that they were the exclusive owners of Wenly Care . . . . They also appeared to have exclusive control over Wenly Care." (Zhang Decl. ¶ 10.) Plaintiff's counsel declares that Wenly Group and Aicem Group were doing business as Wenly Care. (Ji Decl. ¶ 23.) He also declares that Zhang and Liang used their residential address as the entities' business address and that the individual defendants signed the businesses' registration forms as "members" of the companies. *(Id.)*

Moreover, while these assertions may be construed as a claim for alter-ego liability, the theory nonetheless fails. The complaint does not contain any allegations asserting such theory of liability. Because the relevant assertions are not contained within the complaint, the court must reject Plaintiff's theory of alter-ego liability. *See Cripps*, 980 F.2d at 1267 (default does not compensate for essential facts not within the pleadings and those legally insufficient to prove a claim).[4]

### ii. *Failure to pay overtime as required by California law*

California Labor Code section 510(a) states that "[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half time the regular rate of pay for an employee." In addition "any work in excess of 12 hours in one day . . . or in excess of eight hours on any seventh day of the workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee." CAL. LAB. CODE § 510(a).

As discussed *supra* Part III.B.2.i, Plaintiff has alleged that he worked in excess of 8 hours per day and 40 hours per week without adequate overtime pay. Taken as true, these allegations are sufficient to establish a violation of California law requiring payment of overtime compensation.

### iii. *Waiting time penalties*

"If an employer discharges an employee, the wages earned and unpaid at the time of discharge or due and payable immediately." CAL. LAB. CODE § 201(a). "Discharge" occurs "not

---

[4] In fact, during the hearing on the instant motion, Plaintiff conceded that the complaint did not contain allegations as to the individual defendants' liability.

only when [an employer] fires an employee, but also when it releases an employee upon the employee's completion of the particular job assignment or time duration for which he or she was hired." *Smith v. Superior Court,* 39 Cal. 4th 77, 90 (2006). "A willful failure to pay wages within the meaning of Labor Code [s]ection 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due" and there is no good faith dispute that the wages are due. CAL. CODE REGS. tit. 8, § 13520.

In the complaint, Plaintiff alleges that Defendants owed him unpaid overtime wages. (Compl. ¶ 34.) Plaintiff asserts that those wages were ascertainable at the time of termination. *(Id.)* Plaintiff also asserts that Defendants have failed and refused to pay those amounts, which Defendants willfully and intentionally denied him. (Compl. ¶¶ 13, 36, 42.) Taken as true, these allegations establish a violation of California Labor Code section 201.

*iv.     Inadequate pay statements*

California Labor Code section 226(a) requires that an employer "furnish [to] each of his or her employees . . . an accurate itemized statement in writing showing [among other things] (1) gross wages earned, (2) total hours worked by the employee, . . . (5) net wages earned, [and] (6) the inclusive dates of the period for which the employee is paid . . . ."

In the complaint, Plaintiff alleges that Defendants consistently failed to provide him with adequate pay statements. (Compl. ¶ 40.) Plaintiff also alleges that the wage pay statements that Defendants did provide contained incorrect overtime calculations and intentionally omitted on-call hours. *(Id.)* Plaintiff further alleges that Defendants "failed to provide such adequate statements willingly and with full knowledge of their obligations under [s]ection 226," causing injury to Plaintiff. *(Id.* ¶¶ 41, 42.) Taken as true, these allegations are sufficient to establish violations of California Labor Code section 226. *See McKenzie v. Federal Express Corp.*, 765 F. Supp. 2d 1222, 1229 (C.D. Cal. 2011) (statement that contained separate entries for regular and overtime entries, but did not reflect all hours worked violated section 226).

*v.     Missed meal periods*

California Labor Code section 226.7 provides that "[n]o employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial

Welfare Commission."[5]  The statute requires "one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."  CAL. LAB. CODE § 266.7.  The applicable order of the Industrial Welfare Commission prohibits an employer from requiring an employee to "work [a] period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent . . . ."  IWC Order No. 5-2001 ¶ 11.

In the complaint, Plaintiff alleges that he "work[ed] for periods of more than five hours[,]" that meal periods "were not scheduled[,]" and that Defendants "routinely required [him] to work without thirty minute, uninterrupted meal periods" without compensating him for those missed meal periods.  (Compl. ¶¶ 46, 49.)  Plaintiff alleges that he did not waive meal periods and that "[a]ny express or implied waiver[] . . . was not willfully obtained or voluntarily agreed to, but rather was a condition of employment."  (Compl. ¶ 48.)  Taken as true, these allegations are sufficient to establish violations of California Labor Code section 226.7.

### vi.   UCL

California's Unfair Competition Law creates a cause of action for business practices that are: (1) unlawful, (2) unfair, or (3) fraudulent.  *Henry v. Lehman Commer. Paper, Inc. (In re First Alliance Mortg. Co.)*, 471 F.3d 977, 995 (9th Cir. 2006).  "Its coverage has been described as sweeping, embracing anything that can properly be called a business practice and at the same time is forbidden by law." *Id.* (internal quotations and citation omitted).  "Each prong of the UCL is a separate and distinct theory of liability; thus, the 'unfair' practices prong offers an independent basis for relief."  *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007) (citation omitted).  "By proscribing 'any unlawful' business practice, [section 17200] borrows violations of other laws and treats them as unlawful practices that the unfair competition law

---

[5] California Labor Code section 226.7 was amended in 2013, and the current version of the statute became effective January 1, 2014.  SB 435, ch. 719, § 1, 2013 (2013).  Accordingly, the court applies the statute in effect from January 1, 2001 to December 31, 2013.

makes independently actionable." *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotations and citations omitted).

The predicate for Plaintiffs' UCL[6] claim is Defendants' alleged violations of the wage and hour laws discussed above. Because Plaintiff's allegations, taken as true, establish violations of those statutes, Plaintiff may "borrow" from those violations to sustain a UCL claim. *See id.*

### 4. The sum of money at stake

Under the fourth *Eitel* factor, the court considers the sum of money at stake. *Eitel*, 782 F.2d at 1471. When the sum of money at stake in the litigation is substantial or unreasonable, default judgment is discouraged. *See id.* (district court did not abuse its discretion in denying default judgment where plaintiff sought almost $3 million in damages and parties disputed material facts in the pleadings). Here, Plaintiff seeks recovery of $595,908.26 in damages, statutory penalties, and prejudgment interest. This is a considerable sum. The fourth *Eitel* factor therefore militates against the entry of a default judgment in this case.

### 5. The possibility of a dispute concerning materials facts

The fifth *Eitel* factor concerns the possibility of a dispute concerning material facts. *Eitel*, 782 F.2d at 1472. Upon the entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages. *Televideo*, 826 F.2d at 917-18 (citations omitted). Accordingly, the entry of default in this case effectively moots any possible dispute as to material facts. This *Eitel* factor therefore weighs in favor of the entry of a default judgment.

### 6. Whether the default was due to excusable neglect

Under the sixth *Eitel* factor, the court looks at whether the default was due to excusable neglect. *Eitel*, 782 F.2d at 1472. There is no evidence that Defendant's failure to appear or

---

[6] The court limits its analysis to allegations respecting Defendants' non-payment of Plaintiff's overtime compensation. The court disregards Plaintiff's allegations that Defendants' conduct affected other members of the general public, *see* Compl. ¶ 58, as Plaintiff has not satisfied the prerequisites to pursue such representative claims. CAL. BUS. & PROF. CODE § 17203 ("Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure."); CAL. CIV. PROC. CODE 382 ("[W]hen the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all.").

otherwise defend was the result of excusable neglect. In fact, Defendants were aware that this lawsuit was pending. (Ji Decl., Ex. 1, Dkt. No. 10.) Defendants contacted Plaintiff for an extension of time to file an answer. *(Id.)* Defendants knew that the agreed-upon extended deadline was May 30, 2013. *(Id.)* In addition, Plaintiff timely served Defendants with notice of his renewed motion for default judgment. (Cert. of Service, Dkt. No. 27.) Yet, as of the date of this order, Defendants have not filed an opposition, moved to set aside the default, or otherwise appeared in this case. On these facts, the possibility that default was due to excusable neglect is remote. *Cf. Eitel*, 782 F.2d at 172 (record on appeal supported finding of excusable neglect where parties had been engaged in earnest settlement negotiations after the complaint was served). For this reason, this factor weighs in favor of the entry of a default judgment.

       7.     Policy favoring decisions on the merits

In weighing the last *Eitel* factor, the court takes into account the "strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel*, 782 F.2d at 1472. "Cases should be decided upon their merits whenever reasonably possible." *Id.* (citation omitted). As granting the instant motion for default judgment would preclude a decision on the merits, this factor militates against the entry of a default judgment in this case.

The only two *Eitel* factors that militate against the entry of default judgment are the fourth and seventh factors, which concern the sum of money at stake and the policy favoring decisions on the merits. The remaining *Eitel* factors all weigh in favor of the entry of default judgment in this case. Accordingly, the court recommends that the district court grant the instant motion and enter default judgment in this case against Aicem Group and Wenly Group, jointly and severally, in the amounts set forth immediately below.

**C.   Damages**

After entry of default, well-pleaded factual allegations in the complaint are taken as true, except as to the amount of damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit. *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005).

In his complaint, Plaintiff prayed for (1) all unpaid overtime wages, (2) liquidated damages under the FLSA in an amount equal to unpaid overtime wages, (3) prejudgment interest, (4) damages and penalties for failure to pay minimum wage, (5) waiting time penalties, (6) damages and penalties for inadequate pay statements, (7) damages and penalties for missed meals, (8) reasonable attorney's fees, (9) equitable and injunctive relief including disgorgement of profits and an equitable accounting, (10) restitution of earned but unpaid wages, and (11) costs of suit. (Compl. at 13.)  In his motion for default judgment, however, Plaintiff seeks recovery of $595,809.26, an amount which, according to the declarations submitted in support of the motion, is comprised of the following:  (1) $245,860 in unpaid overtime compensation, (2) $83,399.48 in prejudgment interest, (3) $4,748.70 in waiting-time penalties, (4) $245,860 in penalties for inadequate pay statements, (5) $12,290.08 in penalties for missed meals, (6) $4,000 in attorney's fees, and (7) $750 in costs.  (Renewed Mot. Def. J. at 2; Ji Decl. ¶¶ 11, 14, 15, 17, 18, 20, 21.) The court therefore limits its analysis to the relief Plaintiff seeks in the instant motion.   In so doing, the court nonetheless construes Plaintiff's request for all unpaid overtime compensation as one not only for recovery under the FLSA and the California Labor Code, but also for recovery under UCL, to the extent that the UCL statute of limitations allows Plaintiff to recapture any amounts otherwise lost due to the other provisions' shorter statute of limitations.

        1.      <u>Unpaid overtime compensation</u>

                a.      *Recovery under the FLSA and the California Labor Code*

The FLSA permits recovery of damages "in the amount of [an employee's] unpaid minimum wages, or [an employee's] unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).  "An employee seeking to recover unpaid minimum wages or overtime under the FLSA has the burden of proving that he performed work for which he was not properly compensated." *Brock v. Seto*, 790 F.2d 1446, 1447-48 (9th Cir. 1986) (citation omitted).  Where it is undisputed that an employer failed to record overtime hours and wages as required by FLSA, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he

13

produces sufficient evidence to show the amount and extent of that work as a matter of a just and reasonable inference." *Brock*, 790 F.2d at 1448 (internal citations omitted). The applicable statute of limitations for FLSA claims is "two years after the cause of action accrued" and three years for "a cause of action arising out of a willful violation . . . ." 29 U.S.C. § 255. A FLSA claim for unpaid overtime compensation "accrues" each pay day that excludes the overtime compensation at issue. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir. 1993). The applicable statute of limitations for claims for unpaid overtime compensation brought pursuant to the California Labor Code is also three years. *Aubry v. Goldhor*, 201 Cal. App. 3d 399, 404 (1988).

Plaintiff's claims that accrued outside of the three-year statute of limitations period are time-barred.[7] *See* 29 U.S.C. § 255; *Biggs*, 1 F.3d at 1540. Based on the March 25, 2013 filing of the complaint, the three-year statute of limitations bars claims for wages that accrued before March 25, 2010. Therefore, the amount of overtime compensation Plaintiff seeks for that period, $105,828.32, which accrued between April 3, 2009 and March 19, 2010, is not recoverable. (*See* Zhang Decl., Ex. 4, Dkt. No. 23.) After making the appropriate adjustment to the total amount of overtime compensation sought, $245,860, Plaintiff is entitled to $140,031.68 in unpaid overtime compensation under the FLSA and the California Labor Code.

### b. Recovery under California's UCL

California's UCL provides that "[a]ny person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction." CAL. BUS. & PROF. CODE § 17203. That provision authorizes the court to "make such orders or judgments . . . as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition . . . or . . . to restore to any person in interest any money or property,

---

[7] The court finds it appropriate to apply the three-year statute of limitations instead of the typical two-year statute of limitations in light of Plaintiff's allegations that Defendants "intentionally . . . and without good cause, failed to pay Plaintiff his proper wages." Compl. ¶ 21. *See* 29 U.S.C. 225(a) ("[A] cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued . . . ."). To the extent that the statute of limitations bars recovery of unpaid overtime compensation, those amounts are recoverable as restitution under California's UCL, provided that they fall within the four-year statute of limitations that apply to actions commenced pursuant to that statute. *See supra* Part III.C.1.b.

real or personal, which may have been acquired by means of such unfair competition." *Id.* UCL embraces claims for unpaid overtime compensation, which are subject to a four-year statute of limitations under the statute. *See Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178 (2007) ("[A restitutionary] order that a business pay to an employee wages unlawfully withheld is consistent with the legislative intent underlying the authorization in section 17203 for orders necessary to restore to a person interest money or property acquired by means of an unfair business practice."); CAL. BUS. & PROF. CODE § 17208 ("Any action to enforce any cause of action under this chapter shall be commenced within four years after the cause of action accrued.").

In the instant motion, Plaintiff seeks recovery of all unpaid overtime compensation. While the statute of limitations under the FLSA and the California Labor Code prevent Plaintiff from recovering the full amount of his unpaid overtime compensation under those provisions, California's UCL's statute of limitations is four, not three, years. Thus, under UCL, Plaintiff may recover the $105,828.32 in unpaid overtime compensation that he is not otherwise able to recover. Plaintiff is therefore entitled to that amount as restitution, bringing the total amount of recoverable unpaid overtime compensation to the original $245,860 Plaintiff seeks in the instant motion.[8]

### 2. Prejudgment interest

California Labor Code section 1194(a) provides that "any employee receiving less than . . . the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this . . . overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." California Labor Code section 218.6 states that mandates an "award [of] interest on all due and unpaid wages at the rate specified in subdivision (b) of Section 3289 of the Civil Code, which shall accrue from the date that the wages were due and payable . . . ." California Civil Code section 3289(b) provides for "interest at a rate of 10 percent per annum." California Civil Code section 3287 governs interest on damages "certain, or capable of being made certain by calculation . . . ."

---

[8] The court is persuaded that the allegations in the complaint were sufficient to put Defendants on notice that Plaintiff was seeking compensation for overtime worked, including on-call hours. As Plaintiff has adequately proved-up the number of on-call hours he worked during the relevant time period, this figure appropriately includes compensation for those hours.

Plaintiff seeks a total of $82,399.48 in prejudgment interest. (Ji Decl. ¶¶ 12, 13, 14.) Plaintiff has adequately proved-up this figure in the declarations submitted in support of the instant motion. (*See id.*) Plaintiff is therefore entitled to $82,399.48 for prejudgment interest that has accrued up to the date of the hearing on the instant motion, in addition to any adjustment necessary to capture any amounts that have accrued since the January 16, 2014 hearing date.[9]

### 3. Waiting time penalties

"If an employer willfully fails to pay, with abatement or reduction, . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced, but the wages shall not continue for more than 30 days." CAL. LAB. CODE § 203(a).

At the time of termination, Plaintiff's daily wage was $158.29 per day, based of 40 hours per week at an hourly rate of $8.00, 29 hours per week an hourly rate of $12.00, and 27.5 hours per week at an hourly rate of $16.00. (*See* Ji. Decl. ¶ 15.) Plaintiff is therefore entitled to waiting time penalties in the amount of $4,748.70.

### 4. Damages and penalties for inadequate pay statements

California Labor Code section 226(e) provides authorizes recovery of "the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000)" where an employee "suffer[ed] injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a)."

Plaintiff asserts that his actual damages were $245,860.52, the amount of his unpaid overtime compensation. (Ji Decl. ¶ 17.) Plaintiff calculates the statutory penalties at $9,050, based

---

[9] The court notes that the California Supreme Court has granted review in *Rodriguez v. RWA Trucking Co., Inc.*, 219 Cal. App. 4th 692, 710 (2013), where the court of appeal concluded that California Civil Code section 3287, which governs interest on damages certain, does not authorize prejudgment interest on an award of restitution under the UCL. The court of appeal, however, left open the possibility that a trial court may exercise its discretion and nonetheless award prejudgment interest. As the issues up for review do not implicate that part of the decision, *see* 2013 WL 6064369, this court exercises its discretion to do so here and finds that Plaintiff is entitled to prejudgment interest on the full amount of unpaid overtime compensation.

on $50 for the first inadequate pay statement, and $100 for the remaining 90 inadequate pay statements. *(Id.)* At the hearing on the instant motion, the court asked Plaintiff whether the maximum amount recoverable under section 226(e) was the $4,000 limit specified in the statute. Plaintiff stated that he was unaware of any limit on recovery, and conceded that if the court found it appropriate to impose such a limit, it could do so. In this case, the court finds that Plaintiff is entitled to the maximum statutory penalty of $4,000. *See Delgado v. Deanda*, No. C10-02799 HRL, 2011 WL 7946405, at * 3 (N.D. Cal. Nov. 23, 2011) (awarding $4,000 as statutory maximum where plaintiffs alleged actual damages greater than $4,000 but requested the statutory maximum), *Yadira v. Fernandez*, No. C-08-05721 RMW, 2011 WL 2434043, at *2 (N.D. Cal. June 14, 2011) (noting that recovery under section 226(e) is capped at $4,000 and awarding that amount as the maximum amount recoverable under the statute).

### 5. Damages and penalties for missed meal periods

"If an employer fails to provide an employee a meal period or rest period . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided." CAL. LAB. CODE § 226.7(b) (emphasis supplied). The statute of limitations for claims under this section is four years. *Cf. Tomlinson v. Indymac Bank, F.S.B.*, 359 F. Supp. 2d 891, 898 (C.D. Cal. 2005) (award under section 226.7 is not a penalty, the four-year statute of limitations governing UCL claims, rather than the one-year statute in California Code of Civil Procedure section 340(a), applies.") with *Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1401 (2010) (waiting time penalties are not intended to compensate employees for work performed but to punish employers, not recoverable under UCL, and thus subject to three, not four-year statute of limitations).

In the declarations submitted in support of the instant motion, Plaintiff has adequately proved-up the $12,290.08 he seeks in damages and penalties for missed meal periods. (*See* Ji Decl. ¶ 18.) Plaintiff is therefore entitled to recover that amount.

### 6. Reasonable attorney's fees and costs

Plaintiff is entitled to reasonable attorney's fees and costs under the FLSA and California law. 29 U.S.C. § 216(b); CAL. LAB. CODE § 1194. Courts in the Ninth Circuit calculate an award

17

of attorney's fees using the lodestar method, whereby a court multiplies "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citation omitted).  A party seeking attorney's fees bears the burden of demonstrating that the rates requested are "in line with the prevailing market rate of the in the community." *Id.*  Typically, affidavits of counsel "regarding prevailing fees in the community and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (citation omitted).  The "community is the forum in which the district court sits." *Camacho*, 523 F.3d at 979 (citation omitted).

Plaintiff's counsel spent 20 hours litigating this action.  (Ji. Decl. ¶ 20.)  He seeks compensation at a rate of $200 per hour, for a total of $4,000 in fees, and reimbursement of $750 in costs.  *(Id.)*  This court is familiar with the range of rates customarily charged by attorneys practicing before it, and the stated hourly rates appear to be commensurate with those charged for cases of this magnitude and complexity and for similar work performed by attorneys of comparable skill, experience, and reputation.  On these grounds, the court finds that the hourly rate requested is reasonable and that the number of hours counsel spent litigating this action is also reasonable.  Plaintiff is therefore entitled to recovery attorney's fees in the amount of $4,000.  The record also substantiates the $750 in costs for which Plaintiff's counsel has requested reimbursement, $350 for filing the complaint and $400 for service of process.  Accordingly, Plaintiff is entitled to $750 in costs.

## IV.   CONCLUSION

For the reasons set forth above, the court recommends that Plaintiff's motion for default judgment be granted.  Default judgment should be entered against Aicem Group, LLC and Wenly Group, LLC, jointly and severally, in the amount of $354,048.26.  That amount accounts for: $245,860 in unpaid overtime compensation, $82,399.48 in prejudgment interest, $4,748.70 in waiting time penalties, $4,000 in penalties for inadequate pay statements, $12,290.08 for missed meal periods, $4,000 in attorney's fees, and $750 in costs.

Any party may file objections to this Report and Recommendation with the district judge within fourteen days after being served with a copy.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); CIVIL L.R. 72-3.  Failure to file an objection may waive the right to review of the issue by the district court.

IT IS SO RECOMMENDED.

DATE: January 28, 2014

_____
KANDIS A. WESTMORE
United States Magistrate Judge